**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| VERSEL ROY FINGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1519MLM |
| ) | |
| STANDARD INSURANCE COMPANY ) | |
| and WAINWRIGHT INDUSTRIES, INC.,) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Standard Insurance Company ("Standard"). Doc. 18. Plaintiff Versel Roy Fingers "Plaintiff") filed a Response. Doc. 21. Standard filed a Reply. Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 12.

### UNDISPUTED FACTS[1]

Plaintiff became an employee of Wainwright Industries, Inc., ("Wainwright") on March 27, 2000. The Short Term Disability ("STD") Plan sponsored by Wainwright, and issued by Standard, began January 1, 2001. A Wainwright employee had to pay the premium to participate in the STD Plan. Because Plaintiff was an active employee of Wainwright on January 1, 2001, he had the right to elect to participate in the STD Plan effective that date. The STD Plan provides that if an eligible employee does not elect to participate within thirty-one days of his first being eligible to participate,

---

[1] The facts are undisputed unless otherwise stated. Although he stated that he complied with Local Rule 7-4.01(E), Plaintiff does not specifically admit or deny each of Standard's statements of undisputed facts as required by that Rule. Rather, Plaintiff provided his own statement of undisputed facts in which he addresses some of the same facts stated by Standard.

he must submit "Evidence of Insurability" ("EOI") satisfactory to Standard. In those circumstances when an employee is required to submit EOI, his coverage under the STD Plan does not become effective until Standard approves his EOI. The coverage does not set a time standard for reviewing the EOI. The STD Plan states that a claimant must give Standard "Proof of Loss within 90 days after the end of the Benefit Waiting Period"; that Standard "may investigate [a] claim at any time"; that Standard "will pay STD Benefits within 30 days after [the claimant] satisf[ies] Proof of Loss"; that a claimant "will receive a written decision within 90 days after [Standard] receives [the] claim"; that the claimant will have "an immediate right to request review" if the claim is denied; that *if a claim is denied, the claimant will receive written notice, including, among other things, "[i]nformation concerning [his] right to review [Standard's] decision"*; that *if a claim is denied, review must be requested in writing within 60 days after receiving such notice*; that Standard will send a claimant notice of its decision regarding review within 60 days after it receives a request for review; that Standard has the authority to, among other things, determine eligibility for insurance and benefits; that a claimant may not bring legal action until 60 days after he has given Standard Proof of Loss. Administrative Record ("Rec.") at 1-22 (emphasis added).

Plaintiff made his election to participate in the STD Plan in December 2001, twelve months after the STD Plan's effective date. Plaintiff states in an affidavit that premiums for coverage under the STD Plan were deducted from his payroll checks, a fact which Standard neither admits nor denies. To the extent that deductions were made, Plaintiff does not suggest the specific date upon which deductions commenced other than to state that deductions were being made prior to February 7, 2002, the date upon which he became disabled. On December 18, 2001 Plaintiff completed a Medical History Statement which was the beginning of his effort to show EOI. In response to a

2

question on the Medical History Statement asking if he was taking medication for any physical, mental or emotional condition, injury or sickness, Plaintiff stated, "yes." The Medical History Statement did not request that the applicant name the medications. The Medical History Statement, as submitted in February 2002, reflects that, in response to a question asking the name of the doctor who would have the applicant's complete medical records, Plaintiff wrote "Dr. William Sill." In response to a question asking the doctor's address, Plaintiff wrote "St. Peters." Rec. at 41. Plaintiff left blank the portion of the Medical History Statement in which the applicant was asked to provide a "Description of Injuries, Disorders and Operations," the "Month/Year," the "Duration," the "Final Result," and "Physicians Consulted, City & State." Rec. at 41.

Plaintiff submitted a claim for STD, stating that he was unable to work as of February 8, 2002. The claim form was signed by a representative of Wainwright on February 26, 2002. Plaintiff signed the claim form on March 8, 2002. The portion of the claim form completed "by the attending physician is dated March 8, 2002, and states that Plaintiff's diagnosis was "major depression"; that the date of Plaintiff's *"first visit" was February 8, 2002*; that Plaintiff's prognosis was "good"; and that the doctor was unable to determine when Plaintiff would be able to return to work. The date stamp on the claim form states "Received Consolidated Disability Benefits, March 12, 2002." Rec. at 116-19.

By letter, dated March 18, 2002, Standard notified Plaintiff that he had been approved for STD; that his disability began on February 8, 2002; that "to be eligible for continued benefits, [he] must meet the requirements of [his] group policy"; that "to confirm [his] continued disability, [Standard would] periodically request that [Plaintiff] have the physician treating [him] complete a medical questionnaire"; that "additional information [was] needed to determine if [Plaintiff's]

3

disability [could] continue after 03/24/2002 because the medical information" Standard had in Plaintiff's file did "not provide [Standard] with documentation that [his] present medical condition will be disabling beyond this date"; that the maximum benefit period for STD was 365 days; and that benefits would be discontinued, among other reasons, when Plaintiff failed to "meet any of the conditions for eligibility as defined in the group policy." The letter further stated that Plaintiff's claim "will be closed [for] the reasons outlined above," and that if Plaintiff wanted Standard to review his claim and Standard's decision, he "must send [Standard] a written request within 180 days after he received this letter." The March 18, 2002 letter further set forth procedures which should be followed in the event Plaintiff sought review and further informed him that review would be completed within forty-five days and that Plaintiff had the right to file suit under ERISA. Rec. at 120-21.

A psychiatric questionnaire, dated March 18, 2002, lists as diagnosis, "major depression." The questionnaire also states that Plaintiff was currently unable to work; that his condition was expected to improve; and that it was anticipated that Plaintiff would be able to return to work on June 1, 2002. Rec. at 126-28.

By letter, dated April 5, 2002, Standard thanked Plaintiff for his application for "group Long Term and Short Term Disability insurance" and stated that Standard needed some additional information "in order to complete [its] underwriting evaluation of [his] application." The letter further asked Plaintiff to "review the enclosed Medical History Statement" and "[u]pdate [it] as necessary to *include any changes in [his] health status*." (emphasis added). The letter further asked Plaintiff to "provide details, duration, results, physicians name and address" in regard to Question 7 on the Medical History Statement, to which question Plaintiff answered "yes" when asked if he was

4

taking medication. Rec. at 63.

On May 7, 2002, Plaintiff wrote on a Medical History Statement, in response to the previously unanswered question, that he had GERD, that he had it since January 1999, that he currently had that condition, and that Dr. Sill was the doctor treating him for this condition. Rec. at 62.

An e-mail, dated April 30, 2002, from Lavonne Young, Senior Disability Technical Specialist for Standard, to Betsy Jaurequi, Supervisor Employee Benefits-Insurance Division, states, among other things, that she "picked up the copy of [Plaintiff's] evidence application from Flo"; that Plaintiff "signed it December 18, 2001 and only *listed Dr. William Sill* but no address"; that "it wasn't received into evidence until March 20, 2002, although the date stamp says 2001"[2]; and that Plaintiff's "STD shows that he ceased working on February 27, 2002 and saw Dr. John Canale, [a] psychiatrist on 02/08/02 and on 03/08/02 when Dr. Canale completed the APS"; and that "[w]ho knows where the application was from December 18, until March 20th." Rec. at 125 (emphasis added).

A letter, dated May 2, 2002, from Standard to Plaintiff states:

> I am writing regarding the processing of your claim for Short Term disability (STD) benefits. We notified you by letter on March 18, 2002 that your claim had been approved. However, it appears a check for payment from February 22, 2002 through March 24, 2002 was not processed until April 22, 2002. Our check in the amount of $2,497.73 was mailed to your employer.
> 
> Because there was a delay in the processing of your payment we have agreed to allow you to cash the check. This payment is being made by exception and should not be considered as acceptance by Standard Insurance Company of your entitlement to benefits.
> 
> After processing your payment, we discovered that you had applied for STD coverage and submitted a Medical History Statement that was signed on December 18, 2001. However, the application was not received in our office until March 20, 2002, which

---

[2] The Record reflects that Plaintiff's claim form is date stamped "Received Consolidated Disability Benefits Mar 12, *2002*."

> is after you ceased working on February 7, 2002 and submitted a claim. At the time you submitted your claim for STD benefits, your STD coverage was not in effect.
>
> As of this date, your application for STD coverage is still pending. In the event your application is denied we will not request reimbursement from you.
>
> We apologize for incorrectly processing your claim and any inconvenience this may have caused you. If you have any questions regarding this letter, please feel free to call me at the number below. I will be happy to assist you.

Rec. at 123.

An e-mail, dated May 6, 2002, from Becky Markley, Standard's Field Service and Underwriting Manager, to Sue Hecker of Wainwright states that "[t]he Standard continues to accept responsibility for the delay in the decision of Mr. Finger's Medical History Statement dated December 18, 2001. Through no fault of either Mr. Fingers or Wainwright Industries, this ***Medical History statement was incorrectly held with other materials and the Medical History Statement was not forwarded to the Medical Underwriting Department in a timely manner***." (emphasis added). Ms. Markley further stated in the e-mail that during a telephone conversation with Plaintiff she told him that his application for STD coverage would "remain pending" until Standard received "[m]issing information for a question on the Application" and "[i]nformation from [Plaintiff's] physician." Rec. at 66.

In a memorandum, dated May 7, 2002, Flo Stephens of Standard's Medical Underwriting Department stated that in a phone conversation at 7:50 a.m. on that date Plaintiff "explained his response to question 7 was related to the acid reflux condition that he [] had for 3 consecutive years" and that Plaintiff stated that "he is unable to think at times. ... Mr. Fingers also understands that coverage will possibly be denied if the medical records agree with his statements regarding ***the acid reflux for three consecutive years and the inability to think at times***." Rec. at 58 (emphasis added).

6

An e-mail, dated May 7, 2002, from Ms. Stephens to Ms. Markley states that it is "confidential." This e-mail further states that Ms. Stephens spoke with Plaintiff that morning and "was able to obtain information as to why he responded 'yes' to question 7 on the Medical History Statement completed December 18, 2001"; that she advised Plaintiff that his ***application would be denied based on the information he provided in their conversation***; that she "admitted that the denial letter [would] not be sent until after we receive copies of medical records from Dr. William Sill"; and that "in the event that the dates and diagnosis agree with the information provided by [Plaintiff] ***I want the two of you to know that we would have denied STD coverage if the MHS had been received December 18, 2001***." (emphasis added). The May 7, 2002 e-mail also states, "FYI ... I am sending this only because it pertains to the policy holder's request to 'have this matter addressed immediately. ... If anyone can help me help them, I'd welcome your feedback. The frustration and confusion from this "not so funny' comedy of errors continues." Rec. at 61.

An e-mail, dated May 7, 2002, sent at 8:15 a.m. from Becky Markley to Flo Stevens states: "As long as we consistently reinforce the MU *decision* is *based only* [sic] *the information received - not the time lapse from 12/01* (which is our responsibility, not Mr. Finger's fault), I'm hoping we'll soon be able to put the January enrolle issue to bed - and then move on to future challenges." Rec. at 61.

By letter, dated May 14, 2002, Standard advised Plaintiff that as part of the application process for STD, Plaintiff completed a medical history statement; that information provided in this statement and records from Dr. Will Sill were used to evaluate Plaintiff's insurability; that, after a complete review of Plaintiff's application for STD, Standard concluded that it was unable to approve his request for coverage; that this decision was based on information from medical records from Dr. William Sill

7

and from Plaintiff's "admitted stomach disorder"; and that if he has any questions regarding the letter he should "feel free to write the address above or call." Rec. at 112.

Plaintiff asserts, and Standard denies, that on two occasions prior to November 13, 2002, Plaintiff's attorney requested review of Standard's rejection of the EOI. The parties agree that on one occasion Plaintiff's attorney requested review of Standard's decision regarding Plaintiff's short term disability claim.[3] A letter dated November 13, 2003, from Plaintiff's lawyer to Standard states that on May 2, 2002, Standard indicated that Plaintiff "was not covered for his short term disability policy based on the fact that his application was not received until March 20, 2002"; that Wainwright had withheld all of the appropriate premiums and paid them to make [Plaintiff] eligible at all relevant times"; and that "[w]e would greatly appreciate your reviewing this and contacting us at your earliest convenience." Rec. at 129.

By letter, dated November 21, 2003, addressed to Plaintiff's attorney, LaVonne Young of Standard stated that it regretted that it did not receive two earlier letters sent on Plaintiff's behalf; that in regard to the November 13, 2003 letter, although it was "addressed to the wrong name and department, we still should have been able to identify that it belonged in my department"; that Standard would be "happy to review" Plaintiff's claim "with the proper authorization"; and that Standard would "review [Plaintiff's] file and will be able to respond once [it] received the signed authorization." Rec. at 131. The record does not reflect whether, subsequent to receiving the November 21, 2003 letter and prior to filing the instant lawsuit, Plaintiff or his attorney contacted

---

[3] Plaintiff states that, "by counsel, *he requested review November 13, 2002*." Pl. Facts, ¶ 16. Defendant admits this fact. The administrative record, however, includes a letter dated ***November 13, 2003***, from Plaintiff's lawyer requesting review and a letter dated November 21, 2003, responding. Rec. at 129-31.

8

Standard regarding Plaintiff's claim.

Plaintiff contends that he was never given a copy of the STD Plan prior to the filing of the Motion for Summary Judgment. Standard neither admits nor denies this fact.

In the pending Motion for Summary Judgment Standard argues that Plaintiff has failed to exhaust his administrative remedies; that Plaintiff's claim that futility excuses the failure to exhaust is without merit; that Standard's decision finding that Plaintiff did not submit satisfactory EOI was not arbitrary and capricious and/or that this decision was reasonable; and that, therefore, summary judgment should be granted in favor of Standard. Plaintiff argues that he is not required to exhaust his administrative remedies because exhaustion would be futile and that Standard's decision to deny him benefits was arbitrary and capricious.[4]

**STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn.&

---

[4] Plaintiff has not numbered the pages of its Response. Further, Plaintiff inaccurately titled his Response "Defendant Standard Insurance Company's Memorandum." The court has correctly docketed Plaintiff's Response as "Memorandum in Opposition to Motion for Summary Judgment." Doc. 23. Also, the court notes that Plaintiff's arguments are confusing and disjointed but that the court has made an effort to interpret them.

E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."" Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Standard's Motion.

**DISCUSSION**

In regard to Standard's allegation that summary judgment should be granted because Plaintiff has failed to exhaust his administrative remedies, in its March 18, 2002 letter Standard informed Plaintiff of the administrative procedures to be followed in the event a claim is denied. However, as this letter informed Plaintiff that he would receive benefits, there was nothing for Plaintiff to appeal at the time he received the March 18, 2002 letter. Of primary importance, Standard's letter of May

14, 2002, in which Plaintiff was informed that he would not receive benefits, merely told Plaintiff that if he had questions he could call. The May 14, 2002 letter did not inform Plaintiff that the procedures described in the March 18 letter were applicable. Further, while by letter dated November 21, 2003, Standard expressed a willingness to review Plaintiff's claim, Standard did not set forth exhaustion procedures in this letter.

As stated above, the STD Plan states that upon denying a claim, Standard will provide information relevant to the claimant's right to review, including that the review procedures require that a claimant request review, in writing, within 60 days after receiving notice of a denial. Indeed, "when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust [his] administrative remedies bars [him] from asserting any unexhausted claims in federal court." Burds v. Union Pacific Corp., 223 F.3d 814, 817 (8th Cir. 2000) (citing Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir.1998)). The Eighth Circuit holds, however, that exhaustion of administrative remedies under an employee benefit plan is not required where, contrary to requirements of the plan, a letter denying benefits does not inform an employee of appeal procedures. Conley v. Pitney Bowes, 34 F.3d 714, 718 (8th Cir. 1994) ("The terms of the plan and the requirements of the regulation [ ] confer upon a claimant a right to more than just a copy of the summary plan description. He had a contractual right to information on the appeals procedure included with his notice of denial of benefits."). See also Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003) (holding that employee was not required to exhaust administrative remedies provided by ERISA plan when he was not informed, in violation of ERISA, of such remedies). As such, the court finds that, even though Plaintiff had previously been informed of procedures applicable to review of a denial of benefits, Standard was required to inform him of those procedures in its May 14, 2002 letter. See

id.; Conley, 34 F.3d at 718. Because Standard did not do so, the court further finds that Plaintiff was not required to exhaust his administrative remedies. See Back, 335 F.3d at 792; Conley, 34 F.3d at 718. As Plaintiff was not required to exhaust his administrative remedies, the court need not determine whether exhaustion would have been futile.[5]

The court will next address Standard's argument that its decision that Plaintiff did not submit satisfactory evidence of insurability was not arbitrary and capricious and/or unreasonable. Ordinarily, the standard applicable to this court's review of Standard's decision, as most recently articulated by the Eighth Circuit, is the "differential abuse of discretion standard." Willcox v. Liberty Life Assur. Co. of Boston, 552 F.3d 693, 700 (8th Cir. 2009). Pursuant to the differential abuse of discretion standard, a court "look[s] to see whether [the plan administrator's] decision was reasonable."[6] Id. "Under this standard [the plan administrator's] decision must be supported by substantial evidence, which is 'more than a scintilla, but less than a preponderance.'" Id. (quoting Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 828 (8th Cir. 2001)).

Plaintiff contends that a less deferential standard should be applied to Standard's decision because Standard was both insurer and plan administrator. While the Eighth Circuit holds that where there is a conflict of interest a less deferential standard is applied, Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 947-48 (8th Cir. 2000), "not every funding conflict [ ] automatically leads to the conclusion a palpable conflict of interest exists." Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192,

---

[5] "A party may be excused from exhausting administrative remedies ... if further administrative procedures would be futile." Ace Property and Cas. Ins. Co. v. Fed. Crop. Ins. Corp., 440 F.3d 992, 1002 (8th Cir. 2006).

[6] In Willcox, 552 F.3d at 701, the Eighth Circuit found the decision to deny benefits was unreasonable because the defendant relied upon a doctor's report which "mischaracterize[d] the medical evidence in several important respects."

1197 (8th Cir. 2002) (citing Davolt v. The Executive Comm. of O'Reilly Auto., 206 F.3d 806, 809-10 (8th Cir.2000) (holding that the district court erred by finding an automatic conflict of interest merely because insurer and administrator were the same). Indeed, "ERISA itself contemplates the use of fiduciaries who might not be entirely neutral." Id. (citing Farley v. Ark. Blue Cross & Blue Shield, 147 F.3d 774 (8th Cir.1998)).

To establish that the less deferential standard is applicable a plaintiff must establish: "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty.'" Id. (quoting Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998)). The Eighth Circuit has assumed that the first part of the two part test is met where an insurer/administrator fails to give notice of appeal rights to a plaintiff. Id. at 1198. Further, "when an entity funds a plan and is also the plan administrator there is a rebuttable presumption of a palpable conflict of interest." Id. (citing Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 587-88 (8th Cir.1999)). The plaintiff, however, must further show, pursuant to the second prong of the two-part test, that "the conflict or procedural irregularities give rise to serious doubts as to whether the denial was the product of an arbitrary decision or the plan administrator's whim." Id. (citing Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 948 (8th Cir. 2000)).

While it is undisputed that Standard received Plaintiff's Medical History Statement prior to his applying for STD, the court finds that there are genuine issues of material fact in regard to the basis for Standard's decision, including but not limited to whether Standard determined that Plaintiff should be denied coverage under the STD Plan based on information he submitted in December 2001 and his condition at that time or whether the decision was based on Plaintiff's condition after that date,

13

including the condition upon which he relied when applying for STD. See Rec. at 58, 61. Further, to the extent that Wainwright deducted premiums for STD coverage from Plaintiff's paycheck prior to February 2002, the record does not reflect whether Standard received and/or accepted payment for Plaintiff's inclusion in the STD Plan. The court finds, therefore, that Standard's Motion for Summary Judgment should be denied to the extent that Standard contends that its decision was reasonable. Because the court has found that there are genuine issues of material fact regarding Standard's decision, the court need not determine the standard applicable to the court's review of the decision.

## CONCLUSION

For the reasons more fully set forth above, the court finds that Standard's Motion for Summary Judgment should denied.

Accordingly,

**IT IS HEREBY ORDERED** that the court's prior Memorandum Opinion is **VACATED**; Doc. 25;

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant Standard Insurance Company is **DENIED**. Doc. 21.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of March, 2009.