**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **VERSEL ROY FINGERS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1519MLM |
| ) | |
| **STANDARD INSURANCE COMPANY** ) | |
| **and WAINWRIGHT INDUSTRIES, INC.,**) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Amended Complaint filed by Plaintiff Versel Roy Fingers ("Plaintiff") alleging that he was wrongfully denied benefits under an ERISA plan. Also before the court are the Motion to Strike Plaintiff's Proposed Findings of Fact, Exhibit 2, filed by Defendant Standard Insurance Company ("Defendant" or "Standard")[1] and Plaintiff's Motion to Strike the Wikopedia Attachment to Defendant's Trial Brief. Docs. 33, 35. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## MOTIONS TO STRIKE

**A.  Plaintiff's Motion to Strike Defendant's Wikipedia Attachment to Defendant's Trial Brief:**

Plaintiff asks the court to strike the Wikipedia Attachment to Defendant's Trial Brief. The Wikipedia Attachment to Defendant's Trial Brief discusses Lorazeapm, a prescription medication. First, the Wikipedia Attachment is not part of the administrative record and, as such, is not properly

---

[1]  Defendant Wainwright Industries was previously dismissed from this matter. Doc. 15.

before the court. Second, the content of the Wikipedia Attachment is not relevant to the court's determination of the issues before it. The court, therefore, finds that Plaintiff's Motion to Strike Defendant's Wikipedia Attachment should be granted.

**B.     Defendant's Motion to Strike Plaintiff's Proposed Findings of Fact, Exhibit 2:**

Defendant asks the court to strike Plaintiff's Exhibit 2, which is an article for Healthline discussing gastroesophageal reflux disease ("GERD"). First, the Healthline article is not part of the administrative record and, as such, is not properly before the court. Second, the content of Healthline article is not relevant to the court's determination of the issues before it. The court, therefore, finds that Defendant's Motion to Strike Plaintiff's Proposed Findings of Fact, Exhibit 2, should be granted.

## BACKGROUND

As previously stated by this court, the administrative record establishes the following undisputed facts:

> Plaintiff became an employee of Wainwright Industries, Inc., ("Wainwright") on March 27, 2000. The Short Term Disability ("STD") Plan sponsored by Wainwright, and issued by Standard, began January 1, 2001. A Wainwright employee had to pay the premium to participate in the STD Plan. Because Plaintiff was an active employee of Wainwright on January 1, 2001, he had the right to elect to participate in the STD Plan effective that date. The STD Plan provides that if an eligible employee does not elect to participate within thirty-one days of his first being eligible to participate, he must submit "Evidence of Insurability" ("EOI") satisfactory to Standard. In those circumstances when an employee is required to submit EOI, his coverage under the STD Plan does not become effective until Standard approves his EOI. The coverage does not set a time standard for reviewing the EOI. The STD Plan states that a claimant must give Standard "Proof of Loss within 90 days after the end of the Benefit Waiting Period"; that Standard "may investigate [a] claim at any time"; that Standard "will pay STD Benefits within 30 days after [the claimant] satisf[ies] Proof of Loss"; that a claimant "will receive a written decision within 90 days after [Standard] receives [the] claim"; that the claimant will have "an immediate right to request review" if the claim is denied; that *if a claim is denied, the claimant will receive written notice, including, among other things, "[i]nformation concerning [his] right to review [Standard's] decision"*; that *if a claim is denied, review must be*

2

*requested in writing within 60 days after receiving such notice*; that Standard will send a claimant notice of its decision regarding review within 60 days after it receives a request for review; that Standard has the authority to, among other things, determine eligibility for insurance and benefits; that a claimant may not bring legal action until 60 days after he has given Standard Proof of Loss. Administrative Record ("Rec.") at 1-22 (emphasis added).

Plaintiff made his election to participate in the STD Plan in December 2001, twelve months after the STD Plan's effective date. Plaintiff states in an affidavit that premiums for coverage under the STD Plan were deducted from his payroll checks, a fact which Standard neither admits nor denies. To the extent that deductions were made, Plaintiff does not suggest the specific date upon which deductions commenced other than to state that deductions were being made prior to February 7, 2002, the date upon which he became disabled. On December 18, 2001 Plaintiff completed a Medical History Statement which was the beginning of his effort to show EOI. In response to a question on the Medical History Statement asking if he was taking medication for any physical, mental or emotional condition, injury or sickness, Plaintiff stated, "yes." The Medical History Statement did not request that the applicant name the medications. The Medical History Statement, as submitted in February 2002, reflects that, in response to a question asking the name of the doctor who would have the applicant's complete medical records, Plaintiff wrote "Dr. William Sill." In response to a question asking the doctor's address, Plaintiff wrote "St. Peters." Rec. at 41. Plaintiff left blank the portion of the Medical History Statement in which the applicant was asked to provide a "Description of Injuries, Disorders and Operations," the "Month/Year," the "Duration," the "Final Result," and "Physicians Consulted, City & State." Rec. at 41.

Plaintiff submitted a claim for STD, stating that he was unable to work as of February 8, 2002. The claim form was signed by a representative of Wainwright on February 26, 2002. Plaintiff signed the claim form on March 8, 2002. The portion of the claim form completed "by the attending physician is dated March 8, 2002, and states that Plaintiff's diagnosis was "major depression"; that the date of Plaintiff's *"first visit" was February 8, 2002*; that Plaintiff's prognosis was "good"; and that the doctor was unable to determine when Plaintiff would be able to return to work. The date stamp on the claim form states "Received Consolidated Disability Benefits, March 12, 2002." Rec. at 116-19.

By letter, dated March 18, 2002, Standard notified Plaintiff that he had been approved for STD; that his disability began on February 8, 2002; that "to be eligible for continued benefits, [he] must meet the requirements of [his] group policy"; that "to confirm [his] continued disability, [Standard would] periodically request that [Plaintiff] have the physician treating [him] complete a medical questionnaire"; that "additional information [was] needed to determine if [Plaintiff's] disability [could]

3

continue after 03/24/2002 because the medical information" Standard had in Plaintiff's file did "not provide [Standard] with documentation that [his] present medical condition will be disabling beyond this date"; that the maximum benefit period for STD was 365 days; and that benefits would be discontinued, among other reasons, when Plaintiff failed to "meet any of the conditions for eligibility as defined in the group policy." The letter further stated that Plaintiff's claim "will be closed [for] the reasons outlined above," and that if Plaintiff wanted Standard to review his claim and Standard's decision, he "must send [Standard] a written request within 180 days after he received this letter." The March 18, 2002 letter further set forth procedures which should be followed in the event Plaintiff sought review and further informed him that review would be completed within forty-five days and that Plaintiff had the right to file suit under ERISA. Rec. at 120-21.

A psychiatric questionnaire, dated March 18, 2002, lists as diagnosis, "major depression." The questionnaire also states that Plaintiff was currently unable to work; that his condition was expected to improve; and that it was anticipated that Plaintiff would be able to return to work on June 1, 2002. Rec. at 126-28.

By letter, dated April 5, 2002, Standard thanked Plaintiff for his application for "group Long Term and Short Term Disability insurance" and stated that Standard needed some additional information "in order to complete [its] underwriting evaluation of [his] application." The letter further asked Plaintiff to "review the enclosed Medical History Statement" and "[u]pdate [it] as necessary to *include any changes in [his] health status*." (emphasis added). The letter further asked Plaintiff to "provide details, duration, results, physicians name and address" in regard to Question 7 on the Medical History Statement, to which question Plaintiff answered "yes" when asked if he was taking medication. Rec. at 63.

On May 7, 2002, Plaintiff wrote on a Medical History Statement, in response to the previously unanswered question, that he had GERD, that he had it since January 1999, that he currently had that condition, and that Dr. Sill was the doctor treating him for this condition. Rec. at 62.

An e-mail, dated April 30, 2002, from Lavonne Young, Senior Disability Technical Specialist for Standard, to Betsy Jaurequi, Supervisor Employee Benefits-Insurance Division, states, among other things, that she "picked up the copy of [Plaintiff's] evidence application from Flo"; that Plaintiff "signed it December 18, 2001 and only *listed Dr. William Sill* but no address"; that "it wasn't received into evidence until March 20, 2002, although the date stamp says 2001"[2]; and that Plaintiff's "STD shows that he ceased working on February 27, 2002 and saw Dr.

---

[2] The Record reflects that Plaintiff's claim form is date stamped "Received Consolidated Disability Benefits Mar 12, *2002*."

4

John Canale, [a] psychiatrist on 02/08/02 and on 03/08/02 when Dr. Canale completed the APS"; and that "[w]ho knows where the application was from December 18, until March 20th." Rec. at 125 (emphasis added).

A letter, dated May 2, 2002, from Standard to Plaintiff states:

I am writing regarding the processing of your claim for Short Term disability (STD) benefits. We notified you by letter on March 18, 2002 that your claim had been approved. However, it appears a check for payment from February 22, 2002 through March 24, 2002 was not processed until April 22, 2002. Our check in the amount of $2,497.73 was mailed to your employer.

Because there was a delay in the processing of your payment we have agreed to allow you to cash the check. This payment is being made by exception and should not be considered as acceptance by Standard Insurance Company of your entitlement to benefits.

After processing your payment, we discovered that you had applied for STD coverage and submitted a Medical History Statement that was signed on December 18, 2001. However, the application was not received in our office until March 20, 2002, which is after you ceased working on February 7, 2002 and submitted a claim. At the time you submitted your claim for STD benefits, your STD coverage was not in effect.

As of this date, your application for STD coverage is still pending. In the event your application is denied we will not request reimbursement from you.

We apologize for incorrectly processing your claim and any inconvenience this may have caused you. If you have any questions regarding this letter, please feel free to call me at the number below. I will be happy to assist you.

Rec. at 123.

An e-mail, dated May 6, 2002, from Becky Markley, Standard's Field Service and Underwriting Manager, to Sue Hecker of Wainwright states that "[t]he Standard continues to accept responsibility for the delay in the decision of Mr. Finger's Medical History Statement dated December 18, 2001. Through no fault of either Mr. Fingers or Wainwright Industries, this ***Medical History statement was incorrectly held with other materials and the Medical History Statement was not forwarded to the***

*Medical Underwriting Department in a timely manner*." (emphasis added). Ms. Markley further stated in the e-mail that during a telephone conversation with Plaintiff she told him that his application for STD coverage would "remain pending" until Standard received "[m]issing information for a question on the Application" and "[i]nformation from [Plaintiff's] physician." Rec. at 66.

In a memorandum, dated May 7, 2002, Flo Stephens of Standard's Medical Underwriting Department stated that in a phone conversation at 7:50 a.m. on that date Plaintiff "explained his response to question 7 was related to the acid reflux condition that he [] had for 3 consecutive years" and that Plaintiff stated that "he is unable to think at times. ... Mr. Fingers also understands that coverage will possibly be denied if the medical records agree with his statements regarding *the acid reflux for three consecutive years and the inability to think at times*." Rec. at 58 (emphasis added).

An e-mail, dated May 7, 2002, from Ms. Stephens to Ms. Markley states that it is "confidential." This e-mail further states that Ms. Stephens spoke with Plaintiff that morning and "was able to obtain information as to why he responded 'yes' to question 7 on the Medical History Statement completed December 18, 2001"; that she advised Plaintiff that his *application would be denied based on the information he provided in their conversation*; that she "admitted that the denial letter [would] not be sent until after we receive copies of medical records from Dr. William Sill"; and that "in the event that the dates and diagnosis agree with the information provided by [Plaintiff] *I want the two of you to know that we would have denied STD coverage if the MHS had been received December 18, 2001*." (emphasis added). The May 7, 2002 e-mail also states, "FYI ... I am sending this only because it pertains to the policy holder's request to 'have this matter addressed immediately. ... If anyone can help me help them, I'd welcome your feedback. The frustration and confusion from this "not so funny' comedy of errors continues." Rec. at 61.

An e-mail, dated May 7, 2002, sent at 8:15 a.m. from Becky Markley to Flo Stevens states:

> "As long as we consistently reinforce the MU *decision* is *based only* [sic] *the information received - not the time lapse from 12/01* (which is our responsibility, not Mr. Finger's fault), I'm hoping we'll soon be able to put the January enrolle issue to bed - and then move on to future challenges." Rec. at 61.

By letter, dated May 14, 2002, Standard advised Plaintiff that as part of the application process for STD, Plaintiff completed a medical history statement; that information provided in this statement and records from Dr. Will Sill were used to evaluate Plaintiff's insurability; that, after a complete review of Plaintiff's application

6

for STD, Standard concluded that it was unable to approve his request for coverage; that this decision was based on information from medical records from Dr. William Sill and from Plaintiff's "admitted stomach disorder"; and that if he has any questions regarding the letter he should "feel free to write the address above or call." Rec. at 112.

Plaintiff asserts, and Standard denies, that on two occasions prior to November 13, 2002, Plaintiff's attorney requested review of Standard's rejection of the EOI. The parties agree that on one occasion Plaintiff's attorney requested review of Standard's decision regarding Plaintiff's short term disability claim.[3] A letter dated November 13, 2003, from Plaintiff's lawyer to Standard states that on May 2, 2002, Standard indicated that Plaintiff "was not covered for his short term disability policy based on the fact that his application was not received until March 20, 2002"; that Wainwright had withheld all of the appropriate premiums and paid them to make [Plaintiff] eligible at all relevant times"; and that "[w]e would greatly appreciate your reviewing this and contacting us at your earliest convenience." Rec. at 129.

By letter, dated November 21, 2003, addressed to Plaintiff's attorney, LaVonne Young of Standard stated that it regretted that it did not receive two earlier letters sent on Plaintiff's behalf; that in regard to the November 13, 2003 letter, although it was "addressed to the wrong name and department, we still should have been able to identify that it belonged in my department"; that Standard would be "happy to review" Plaintiff's claim "with the proper authorization"; and that Standard would "review [Plaintiff's] file and will be able to respond once [it] received the signed authorization." Rec. at 131. The record does not reflect whether, subsequent to receiving the November 21, 2003 letter and prior to filing the instant lawsuit, Plaintiff or his attorney contacted Standard regarding Plaintiff's claim.

Doc. 26 at 1-9 (emphasis in original).

Based on the above undisputed facts, the court found that Plaintiff was not required to exhaust his administrative remedies and that, therefore, Plaintiff's Amended Complaint seeking STD benefits was properly before the court. The court further found that there was a genuine issue of material fact as to whether the decision to deny Plaintiff short term disability benefits was an abuse of discretion

---

[3] Plaintiff states that, "by counsel, *he requested review November 13, 2002*." Pl. Facts, ¶ 16. Defendant admits this fact. The administrative record, however, includes a letter dated **November 13, 2003**, from Plaintiff's lawyer requesting review and a letter dated November 21, 2003, responding. Rec. at 129-31.

7

pursuant to the standard set forth by the Eighth Circuit in Chronister v. Unum Life Insurance company of America, (8th Cir. 2009). In particular, the court found that there were genuine issues of material facts, "including but not limited to whether Standard determined that Plaintiff should be denied coverage under the STD Plan based on information he submitted in December 2001 and his condition at that time or whether the decision was based on Plaintiff's condition after that date, including the condition upon which he relied when applying for STD. Doc. 26 at 13-14.

Upon this matter being set for trial, the parties submitted a Joint Stipulation of Uncontested Facts, Doc. 28, which included the following stipulated facts:

(1) In the December 18, 2001 Medical History Statement Plaintiff stated that: "he was not taking medication for a physical, mental, or emotional condition"; "he had not been diagnosed or treated or been prescribed any medication for any mental condition or depression"; and "he had not consulted or been attended by a physician or practitioner for any cause in the five years prior to December 18, 2001."

(2) In the December 18, 2002, Medical History Statement Plaintiff "did not identify any history of [GERD]."

(3) In the processing of Plaintiff's Medical History Statement Defendant "obtained the records of Dr. William Sill who was [Plaintiff's] primary care physician."

(4) Dr. Sill's records showed that: Plaintiff "was treated for GERD beginning no later than January 1999"; Plaintiff had regularly taken Nexium for his GERD between January 1999 and December 2001"; and Dr. Sill had diagnosed Plaintiff with anxiety disorder in December 2000 and began prescribing "an anti-anxiety medication (Lorazepan) for [Plaintiff] by at least July 2000."

(5) "Ms. Stevens, operating on behalf of [Defendant]," determined that Plaintiff's evidence of

insurability ("EOI") "was not satisfactory due to his prior treatment for GERD[]."

(6)     Defendant never approved Plaintiff's EOI.

(7)     The STD Plan gives Defendant the discretion to determine eligibility.

## DISCUSSION and APPLICABLE LAW

In the matter under consideration, pursuant to ERISA, Plaintiff challenges Defendant's denying him short term disability benefits. In Metropolitan Life Insurance Co. v. Glenn, 128 S.Ct. 2343, 2347-48 (2008), the Supreme Court acknowledged that in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-13 (1998), the Court set out four principles as to the appropriate standard of judicial review under ERISA, § 1132(a)(1)(B), as follows:

> (1) A court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and considering a benefit determination a fiduciary act, id., at 111-113, 109 S.Ct. 948; (2) trust law principles require de novo review unless a benefits plan provides otherwise, id., at 115, 109 S.Ct. 948; (3) where the plan so provides, by granting "the administrator or fiduciary discretionary authority to determine eligibility," "a deferential standard of review [is] appropriate," id., at 111, 115, 109 S.Ct. 948; and (4) if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion,'" id., at 115, 109 S.Ct. 948.

It is undisputed in the matter under consideration that Defendant is both the administrator of the STD Plan under which Plaintiff seeks benefits and the fiduciary with the discretionary authority to determine eligibility under that Plan. As such, the court finds that Defendant was operating under a conflict of interest when it denied Plaintiff STD benefits. See Glenn, 128 S.Ct. at 2347-48; Firestone, 489 U.S. at 111-13.

In Chronister v. UNUM Life Insurance Company of America, 563 F.3d 773, 775 (8th Cir. 2009) ("Chronister II"), the Eighth Circuit clarified that Glenn holds that "the abuse-of-discretion standard remains the appropriate standard to evaluate an ERISA fiduciary's decision." Chronister II,

563 F.3d at 775, further clarified that, according to Glenn, 128 S.Ct. 2343, in situations, such as the matter under consideration, where a conflict of interest exists because the entity administering an ERISA plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," a plaintiff need not establish a causal connection between the conflict and the decision to deny benefits. However, a less differential standard of review is not applicable. Rather, according to Chronister II, 563 F.3d at 776, a court reviewing the decision to deny benefits under an ERISA plan, where there is a conflict of interest, should apply an abuse of discretion standard and "consider[] the conflict as one factor to determine whether the administrator abused its discretion." (citing Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575 (8th Cir. 2008) (holding that Glenn did not announce a change in the ERISA standard of review, but rather instructed lower courts to continue to review administrator's decisions for an abuse of discretion, considering the conflict as one factor to determine whether the administrator abused its discretion).

The issue before this court is whether Defendant abused its discretion in finding Plaintiff's EOI unsatisfactory and denying Plaintiff's application to participate in Wainwright's STD Plan. See Chronister II, 563 F.3d at 776. Pursuant to an abuse of discretion standard, the court must determine whether Defendant found Plaintiff's EOI unsatisfactory based on his medical condition as of December 2001 or whether this decision was based on Plaintiff's medical condition after that date. While the court previously found that there was a genuine issue of material fact in this regard, it is now undisputed, pursuant to the Joint Stipulation of Uncontested Facts, that Defendant based its decision on Plaintiff's medical condition as of December 2001.

Under an abuse of discretion standard, Defendant's decision cannot be disturbed if it was reasonable. See Wakkinen, 531 F.3d at 583. Defendant's conflict of interest weighs against the

reasonableness of Defendant decision. See Chronister II, 563 F.3d at 775-76. However, given Plaintiff's medical history as of December 2001, including his history of GERD, the court finds that a reasonable person could have made the decision to reject Plaintiff's EOI. See Wakkinen, 531 F.3d at 583 (citing Phillips-Foster v. UNUM Life Ins. Co., 302 F.3d 785, 794 (8th Cir.2002)). Therefore, despite Defendant's conflict of interest, the court finds that Defendant did not abuse its discretion upon rejecting Plaintiff's EOI and, hence, his application to participate in Wainwright's STD Plan. See Glenn, 128 S.Ct. 2343; Chronister II, 563 F.3d at 775-76. Because Plaintiff was not a participant in Wainwright's STD Plan, it follows that he was not eligible for STD benefits under the Plan. In conclusion, the court finds that Defendant did not abuse its discretion in rejecting Plaintiff's EOI and application for STD coverage; that the relief sought by Plaintiff in his Amended Complaint should be denied; and that judgment should be entered in favor of Defendant.[4]

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Amended Complaint is **DENIED**; Doc. 8

**IT IS FURTHER ORDERED** that a separate Judgment shall issue on this same date incorporating this Memorandum Opinion;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Wikipedia Attachment to

---

[4] In the Amended Complaint Plaintiff sought benefits under Wainwright's STD Plan. In addition to finding a material issue of fact in regard to the reason Defendant denied Plaintiff coverage under the STD Plan, the court found in its Amended Memorandum Opinion that there was a genuine issue of material fact as to whether Defendant received and/or accepted payment for Plaintiff's inclusion in the STD Plan. As stated above, the parties' Stipulation that Standard rejected Plaintiff's EOI based on GERD resolves this matter. The court, therefore, need not determine whether Defendant received and/or accepted payment for Plaintiff's inclusion in the STD Plan. Significantly, in the Amended Complaint Plaintiff did not seek reimbursement from Defendant for premiums received and/or accepted.

11

Defendant's Trial Brief is **GRANTED**; Doc. 35

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Proposed Findings of Fact, Exhibit 2, is **GRANTED**; Doc. 33

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June, 2009.